FILED
COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 AUG 19  AM 8: 59



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68378-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| W.S., DOB 07/20/95, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 19, 2013 |

SCHINDLER, J. — The juvenile court found W.S. guilty of domestic violence assault in the second degree of C.G. The "Order on Disposition" prohibits contact with C.G., and the court entered a "Domestic Violence No-Contact Order" (DVNCO) for the 10-year statutory maximum of the crime of assault in the second degree. W.S. concedes the juvenile court had the authority to enter the DVNCO under RCW 10.99.050 but contends the juvenile court did not have the authority to enter a DVNCO that will remain in effect beyond his 18th birthday. We hold the juvenile court has the authority to enter a DVNCO for the statutory maximum for the offense, and affirm.

## FACTS[1]

W.S., date of birth July 20, 1995, and C.G., date of birth November 17, 1994, dated off and on since middle school. On December 31, 2011, W.S. and C.G. got back together but "broke off their relationship again after only a few days - deciding to remain friends instead."

On January 6, 2012, W.S. went to C.G.'s house "to hang out and flirt." At some point C.G. used a chef's knife with an eight-inch blade to slice cake, and left the knife on her dresser.

The flirting between W.S. and C.G. soon turned to "play-fighting." W.S. was also "play-bit[ing]" C.G. "repeatedly on [her] shoulders and back." At some point, W.S. mistakenly called C.G. by the name of his current girlfriend. C.G. got angry and "slapped [W.S.] in the face." W.S. began hitting C.G., yelling, " 'Bitch, I will kill you!' " C.G. fought back but W.S. soon "gained the upper hand," pummeling C.G. until she was on the ground holding her hands over her head to protect herself. W.S. then grabbed the knife from the dresser and stabbed C.G. "with a downward motion, leaving a gaping three-inch gash in her leg." C.G. screamed. W.S. ran out the bedroom door to the backyard.

After waiting a few minutes, C.G. went outside to get help. C.G. said that W.S. "chased her and she was either pushed by [W.S.] or tripped and fell to the ground." After C.G fell down, W.S. kicked her in the face and "continued fighting with her." During the fight, W.S. bit C.G.'s hand, "leaving visible wounds."

---

[1] W.S. does not challenge the findings of fact. Unchallenged findings of fact are treated as verities on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

2

After W.S. left, C.G. went back inside the house yelling, " '[W.S.] stabbed me!' " C.G.'s mother said that C.G. was crying hysterically and holding her leg. C.G.'s mother told her to call 911. C.G. told the 911 operator that her ex-boyfriend stabbed her and she needed medical aid. Seattle police and medics responded to the 911 call. The medics transported C.G. to Harborview Medical Center.

Dr. Martin Makela examined C.G. In addition to the three-inch wound to her leg, C.G. had a deep bite mark on her hand, bite marks on her shoulders and back, and an abrasion and lump near her eye. C.G. told Dr. Makela that "her former boyfriend bit her hand twice and stabbed her in the leg." C.G. told the Harborview social worker that "she was [in] her room with her former boyfriend, play fighting, when he stabbed her in the leg with a knife she had in her room." C.G. also told the social worker that W.S. chased her and "bit her on her hand" before he ran away.

The State charged W.S. with domestic violence assault in the second degree. The State alleged that W.S. intentionally assaulted C.G. with a deadly weapon and recklessly inflicted substantial bodily harm in violation of RCW 9A.36.021(1)(a) and (c). The State also alleged W.S. committed a crime of domestic violence under RCW 10.99.020.[2]

After returning home from Harborview and "in the days and weeks following the incident," C.G. received threatening telephone calls and text messages from W.S.'s family and his friends demanding that "she change her story." In response to the

---

[2] RCW 10.99.020 defines "domestic violence" to include assault in the second degree when committed by a person 16 years or older with whom "a person sixteen years of age or older . . . has had a dating relationship." RCW 10.99.020(3), (5)(b).

threats, C.G. told the police that her injuries were accidental. C.G. said that she lied to the police "[t]o get [W.S.] out of detention and make the threatening messages stop." But "[w]hen it became clear that her false recantation was having no effect," C.G. told the police about the threats and that she lied when she said the injuries were accidental.

The State called a number of witnesses to testify during the four-day fact-finding hearing, including C.G., C.G.'s mother, police officers, and Dr. Makela. W.S. did not testify. The defense argued C.G. was not credible, and that she lied about the attack because W.S. was dating someone else.

The juvenile court found W.S. guilty of domestic violence assault in the second degree. The court found that W.S. recklessly caused substantial bodily harm to C.G. with a knife, and that he committed the "crime against a person sixteen years of age or older with whom [W.S.] has or has had a dating relationship."

The Order on Disposition prohibits W.S. from having "contact with [C.G.] (DV NCO attached)." The court issued a DVNCO under RCW 10.99.050. The DVNCO prohibits W.S. from having contact with C.G. for 10 years, the statutory maximum for the

crime of assault in the second degree.[3]

---

[3] The DVNCO states, in pertinent part:

1    **Protected Person's Identifiers**
[C.G.]
Name (First, Middle, Last)
11-17-94    []    []
DOB    Gender    Race

2    **Respondent**

    A    do not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person

    B    do not contact the protected person, directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the Respondent's lawyers

    C    do not knowingly enter, remain, or come within 500 [feet] (1,000 feet if no distance entered) of the protected person's residence, school, workplace, other

    . . . .

. . . .

4    **This no-contact order expires on** 2-22-22 . . . .

**Warning** Violation of the provisions of this order with actual notice of its terms is a criminal offense under chapter 26 50 RCW and will subject a violator to arrest, any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony **You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions** You have the sole responsibility to avoid or refrain from violating the order's provisions Only the court can change the order upon written application (Additional warnings on page 2 of this order)

**Findings of Fact**

5    Based upon the record both written and oral, the court finds that the Respondent has been charged with, arrested for, or convicted of a domestic violence offense, and the court issues this Domestic Violence No-Contact Order under chapter 10 99 RCW to prevent possible recurrence of violence

6    The court further finds that the Respondent's relationship to a person protected by this order is an . . . [o]ther family member as defined by Ch 10 99 RCW Dating relationship.

. . . .

*Additional Warnings to Respondent* This order does not modify or terminate any order entered in any other case The Respondent is still required to comply with other orders Willful violation of this order is punishable under RCW 26 50 110 State and federal firearm restrictions apply 18 U S C § 922(g)(8)(9), RCW 9 41 040
Pursuant to 18 U S C § 2265, a court in any of the 50 states, the District of Columbia, Puerto Rico, any United States territory, and any tribal land within the United States shall accord full faith and credit to the order

. . . .

9    The clerk of the court shall forward a copy of this order on or before the next judicial day to    Seattle    . . . Police Department where the case is filed which shall enter it in a computer-based criminal intelligence system available in this state used by law enforcement to list outstanding warrants.

ANALYSIS

W.S. concedes the juvenile court had the authority to enter the DVNCO under RCW 10.99.050, but contends the court did not have the authority to enter a DVNCO that extends beyond his 18th birthday. W.S. asserts that under the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, the DVNCO must expire when he turns 18, or at the latest 21. The State contends the juvenile court has the authority to impose a DVNCO under RCW 10.99.050 for the statutory maximum for the crime of domestic violence assault in the second degree.

We review a challenge to the authority of the court de novo. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Interpretation of a statute is a question of law that we also review de novo. Armendariz, 160 Wn.2d at 110; State v. O'Brien, 115 Wn. App. 599, 601, 63 P.3d 181 (2003).

When interpreting a statute, our purpose is to determine and carry out the intent of the legislature and avoid an interpretation that would produce an unlikely, absurd, or strained result. State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010); Morris v. Blaker, 118 Wn.2d 133, 143, 821 P.2d 482 (1992). All language in a statute should be given effect. State v. Williams, 62 Wn. App. 336, 338, 813 P.2d 1293 (1991); In re Detention of Martin, 163 Wn.2d 501, 510, 182 P.3d 951 (2008).

Each provision of a statute must be read in relation to other statutory provisions. State v. Chapman, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). The purpose of interpreting statutory provisions together is to "achieve a harmonious and unified statutory scheme that maintains the integrity of the respective statutes." Chapman, 140 Wn.2d at 448.

6

We look first to the plain language of the statutes and assume the legislature means what it says. Armendariz, 160 Wn.2d at 110; State v. Keller, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). If the plain language of the statute is unambiguous, this court's inquiry is at an end and we enforce the statute "in accordance with its plain meaning." Armendariz, 160 Wn.2d at 110. Under the "plain meaning rule," we review the language of the statute, other provisions of the same act, and related statutes to determine whether we can ascertain legislative intent. City of Seattle v. Allison, 148 Wn.2d 75, 81, 59 P.3d 85 (2002).

It is well established that the juvenile court has the authority to enter a DVNCO under RCW 10.99.050(1). See O'Brien, 115 Wn. App. at 602 (holding juvenile court has the authority to enter a DVNCO as a condition of an Order of Disposition). RCW 10.99.050(1) states:

> When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded and a written certified copy of that order shall be provided to the victim.

A willful violation of a no-contact order issued under the domestic violence act, chapter 10.99 RCW, "is punishable under RCW 26.50.110." RCW 10.99.040(4)(a). RCW 26.50.110[4] provides, in pertinent part:

> (1)(a) Whenever an order is granted under this chapter, chapter 7.-- (the new chapter created in section 33 of the act), 7.90, 9A.46, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the

---

[4] We note the legislature amended RCW 26.50.110 in 2013 to reflect a new section to chapter 9A.46 RCW and a new chapter to Title 7 RCW. ENGROSSED SUBSTITUTE H.B. 1383, at 30-32, 63rd Leg., Reg. Sess. (Wash. 2013). Because no substantive changes were made to RCW 26.50.110, we cite the current statute.

following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:

(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;

(ii) A provision excluding the person from a residence, workplace, school, or day care;

(iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location;

(iv) A provision prohibiting interfering with the protected party's efforts to remove a pet owned, possessed, leased, kept, or held by the petitioner, respondent, or a minor child residing with either the petitioner or the respondent; or

(v) A provision of a foreign protection order specifically indicating that a violation will be a crime.

(b) Upon conviction, and in addition to any other penalties provided by law, the court may require that the respondent submit to electronic monitoring. The court shall specify who shall provide the electronic monitoring services, and the terms under which the monitoring shall be performed. The order also may include a requirement that the respondent pay the costs of the monitoring. The court shall consider the ability of the convicted person to pay for electronic monitoring.

. . . .

(4) Any assault that is a violation of an order issued under this chapter, chapter 7.-- (the new chapter created in section 33 of the act), 7.90, 9A.46, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

(5) A violation of a court order issued under this chapter, chapter 7.-- (the new chapter created in section 33 of the act), 7.90, 9A.46, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9A.46, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020. The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

W.S. asserts that under the JJA, the DVNCO must expire when he turns 18, or at the latest 21. Except for purposes of enforcing restitution or a penalty assessment, the

juvenile court does not have jurisdiction over a juvenile offender after age 21. RCW 13.40.300(3). RCW 13.40.300(3) provides:

> In no event may the juvenile court have authority to extend jurisdiction over any juvenile offender beyond the juvenile offender's twenty-first birthday except for the purpose of enforcing an order of restitution or penalty assessment.

W.S. also cites the statutory provision authorizing the juvenile court to extend jurisdiction for restitution and a penalty assessment to argue that the legislature intended to limit the duration of the effect of a DVNCO to when the offender turns 18. RCW 13.40.198 states:

> If a respondent is ordered to pay a penalty assessment pursuant to a dispositional order entered under this chapter, he or she shall remain under the court's jurisdiction for a maximum term of ten years after the respondent's eighteenth birthday. Prior to the expiration of the ten-year period, the juvenile court may extend the judgment for the payment of a penalty assessment for an additional ten years.

W.S.'s argument ignores the unambiguous and express intent of the legislature to protect victims of domestic violence and the jurisdiction of the superior court to enforce a DVNCO.

"[R]ecogniz[ing] the importance of domestic violence as a serious crime against society," the legislature enacted the domestic violence act, chapter 10.99 RCW, to ensure that domestic violence victims would receive the maximum protection authorized by law. RCW 10.99.010; State v. O.P., 103 Wn. App. 889, 891-92, 13 P.3d 111 (2000).

The purpose of the domestic violence act is to "assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the

law can provide." RCW 10.99.010; State v. Schultz, 146 Wn.2d 540, 546, 48 P.3d 301

(2002). RCW 10.99.010 states, in pertinent part:

> The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide. . . . Only recently has public perception of the serious consequences of domestic violence to society and to the victims led to the recognition of the necessity for early intervention by law enforcement agencies. It is the intent of the legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated. Furthermore, it is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship.

Because the legislature found that "the existing criminal statutes are adequate to

provide protection for victims of domestic violence," the act "created no new crimes but

rather emphasized the need to enforce existing criminal statutes to protect the victim

regardless of whether the victim was involved in a relationship with the aggressor."

RCW 10.99.010; Roy v. City of Everett, 118 Wn.2d 352, 358, 823 P.2d 1084 (1992).

Nonetheless, as part of the 2007 amendments to former RCW 26.50.110 (2006), the

legislature expressly states its clear intent that a willful violation of a DVNCO is a

criminal offense that "shall be enforced accordingly to preserve the integrity and intent

of the domestic violence act." LAWS OF 2007, ch. 173, §1.[5]

Under the JJA, the juvenile court has exclusive original jurisdiction over all

proceedings "[r]elating to juveniles alleged or found to have committed offenses." RCW

---

[5] The legislature finds this act necessary to restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic violence act. This act is not intended to broaden the scope of law enforcement power or effectuate any substantive change to any criminal provision in the Revised Code of Washington. Laws of 2007, ch. 173, § 1.

13.04.030(1)(e). But the juvenile court is not a separate constitutional court, it is a division of superior court. RCW 13.04.021; State v. Werner, 129 Wn.2d 485, 492, 918 P.2d 916 (1996).

The Washington State Constitution provides that the superior courts are courts of general and original jurisdiction "in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law." WASH. CONST. art. IV, § 6 (amend. LXXXVII). Article IV, section 6 also states, "The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6 (amend. LXXXVII).

Under RCW 26.50.110(6), the superior or municipal court where either the victim or the respondent permanently resides at the time of the alleged violation has the authority to enforce a DVNCO issued under the domestic violence act, chapter 10.99 RCW. Accordingly, after a juvenile offender turns 18, a motion to modify a DVNCO or a willful violation of the DVNCO under RCW 26.50.110 can be filed in superior court. RCW 10.99.040(4)(a); State v. Dion, 160 Wn.2d 605, 609, 159 P.3d 404 (2007).

W.S. also relies on the Supreme Court's decision in Armendariz to argue that the DVNCO must expire when the juvenile offender turns 18. W.S. cites the language that "it is reasonable to subject these conditions to the same time limit as applies to all other aspects of a defendant's sentence." Armendariz, 160 Wn.2d at 119. Contrary to W.S.'s argument, Armendariz supports the conclusion that the juvenile court had the authority to impose a DVNCO under RCW 10.99.050 for the statutory maximum of the crime of domestic violence assault in the second degree.

In Armendariz, the sentencing court entered a no-contact order for the statutory maximum of the crime of assault. Armendariz, 160 Wn.2d at 108. The Supreme Court addressed whether under RCW 9.94A.505(8) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the court could impose a crime-related prohibition against contacting a victim for the five-year statutory maximum of the crime.[6] Armendariz, 160 Wn.2d at 108.

The defendant in Armendariz argued that the no-contact order "must be limited to the term of his community custody." Armendariz, 160 Wn.2d at 118. The State asserted that the court has the authority to enter a no-contact order for the statutory maximum term of the crime. Armendariz, 160 Wn.2d at 118-19. The Supreme Court agreed with the State. The Court held:

> [T]rial court authority to impose crime-related prohibitions, including no-contact orders, under RCW 9.94A.505(8), is independent of authority to impose conditions of community custody. This being so, it would be illogical to limit the effectiveness of orders imposed under RCW 9.94A.505(8) to a defendant's community custody term. In contrast, a time limit concomitant with the statutory maximum for the defendant's crime is logical, as well as supported by the plain language of the SRA, its legislative history, and its interpretation by the [Sentencing Guidelines Commission].

Armendariz, 160 Wn.2d at 119.

We hold that the juvenile court's authority to impose a DVNCO under RCW 10.55.050 for the statutory maximum of the crime is independent and unrelated to the court's statutory jurisdiction over the offender. After a juvenile offender turns 18, the

---

[6] Under RCW 9.94A.505(8), "the court may impose and enforce crime-related prohibitions and affirmative conditions."

superior court has the authority to enforce the DVNCO.[7]

We affirm entry of the DVNCO for the statutory maximum for the crime of assault in the second degree.

WE CONCUR:

---