## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, M.H.P., a Minor, | ) ) ) ) | No. 68772-7-I |
| | ) | |
| Petitioners, | ) ) | DIVISION ONE |
| | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| PAUL PARVIN and LESLIE BRAMLETT, | ) ) ) | |
| | ) | |
| Respondents. | ) | FILED: June 9, 2014 |

SPEARMAN, C.J. — In termination of parental rights cases, indigent parents represented by appointed counsel must petition the government for public funding for expert witnesses and other services necessary in the course of their defense. In King County Superior Court, parents may move the court *ex parte* for such funding, as well as for orders to seal the moving documents. The Department of Social and Health Services (the State) asserts that this *ex parte* motion practice improperly denies the other parties notice and opportunity to be heard on the motions. The State contends that this practice violates GR 15, which generally governs the sealing of court records. The State also contends

that this practice violates the right of the public to open court proceedings and improperly applies a criminal court rule, CrR 3.1(f), to civil cases.

We conclude that the notice requirements of GR 15(c)(1) do not adequately safeguard the due process guarantees of indigent parents involved in termination proceedings seeking public funding for expert and other services. Accordingly, we hold that motions for such services, including motions to seal the moving papers, are exempt from the notice requirements of the rule. We further hold that the trial court's orders to seal records in this case meet the standard set forth in Dreiling v. Jain, 151 Wn.2d 900, 93 P.3d 861 (2004), which adopts the well-established analytical approach announced in Seattle Times v. Ishikawa, 97 Wn.2d 30, 640 P.2d 716 (1982). Lastly, we hold that the trial court was within its discretion to adopt the CrR 3.1(f) *ex parte* motion procedure as the proper method for the parents to seek public funding for expert services and orders to seal because no other statute or enforceable court rule prescribed the mode of proceeding. We affirm the ruling of the trial court.

## FACTS

Paul Parvin and Leslie Bramlett are the parents of M.H.P. At the time of trial, four-year-old M.H.P. had already been found dependent and removed from his parents, based on their mental illness, substance abuse, history of violence,

and resulting neglect of the child. The State filed a petition for termination of Parvin and Bramlett's parental rights on August 31, 2011.

The court issued a case schedule in the termination proceeding, which established the deadline for the exchange of witness lists and a discovery cutoff in December 2011. After all discovery deadlines had passed, the parents brought multiple *ex parte* motions for public funding for expert defense services and orders to seal the moving papers.[1] The parents never advised the court of the applicable discovery deadlines or requested that they be extended. The record does not disclose whether the judge who heard the *ex parte* motions and entered the orders to seal was aware of the discovery deadlines in the case.

Neither of the other parties to the matter, the State and the child's Court Appointed Special Advocate (CASA), was provided notice of these motions or given the opportunity to be heard in opposition. The *ex parte* orders were only discovered by the CASA when reviewing the legal file after the parents made a joint motion to continue the trial date.

On March 15, 2012, the State challenged the *ex parte* orders in this case, along with similar orders in four other cases involving juvenile dependency and termination of parental rights. The State brought a motion to vacate the *ex parte*

---

[1] The first was brought on January 11, 2012, more than one month after the discovery cutoff and witness disclosure deadline had passed, when counsel for the mother sought and obtained an *ex parte* order for expert services and an *ex parte* order to seal. The second was brought on February 2, 2012, two months after the discovery cutoff and witness disclosure deadline had passed, when counsel for the father brought an *ex parte* motion to appoint a defense expert. The third request was brought on March 10, 2012, a full three months after the discovery cutoff and witness disclosure deadline, when counsel for the mother again sought and obtained an *ex parte* order for expert services and an *ex parte* order to seal.

orders on the basis of GR 15. The State also requested identification of other cases in which this *ex parte* motion practice had occurred so that relief could be sought. The State's motion was denied in a memorandum opinion on April 10, 2012, as was its subsequent requests for clarification and entry of an order containing findings of fact and conclusions of law.

In May 2012, after the trial court's ruling, the mother sought additional *ex parte* orders appointing another expert and sealing the documents supporting her motion. As before, neither the State nor the child's CASA was provided notice of these motions.

On August 14, 2012, two weeks before trial, the mother's counsel served the State with a witness list that, for the first time, identified Dr. Makiko Guji as an expert witness for the mother. The mother asserted that Dr. Guji had treated her for the past year, and would testify that she had made good progress in mental health treatment and that her medications controlled her symptoms. No information verifying Dr. Guji's expected testimony was provided to the State at that time.

On Friday, August 24, 2012, just one business day before trial was set to start, a second previously undisclosed defense expert was identified when counsel for the mother sent the State an evaluation by Dr. Carmela Washington-Harvey. This was the first time the State learned that Dr. Washington-Harvey had evaluated the mother and would be called as an expert witness.

The State filed a motion, joined by the CASA, to exclude the testimony of Dr. Guji and Dr. Washington-Harvey. The trial judge granted the motion. In his ruling, the judge explained that, although the defense had the right to seek expert funding *ex parte*, it still had an obligation to timely disclose the experts when it became clear they would testify.

The State seeks review of the order denying its motion to vacate the *ex parte* orders, as well as the order denying the State's motion for clarification and entry of findings of fact.[2]

## DISCUSSION

The issue in this case is whether indigent parents involved in termination proceedings may move the court *ex parte* for orders authorizing the expenditure of public funding to obtain the assistance of experts and to seal documents regarding those motions without notice to other parties.

GR 15 generally governs the procedure for sealing court records. King County has adopted Local General Rule (LGR) 15 which provides further guidance in civil cases.[3] Under CrR 3.1(f), attorneys representing indigent criminal defendants may move the court *ex parte* to obtain expert or other services necessary to the defense, along with orders to seal the moving papers;

---

[2] The judge deciding the State's motions challenging the *ex parte* motion practice is different from the judge hearing the trial. None of the trial judge's rulings are before us in this appeal.

[3] Our Supreme Court held the rule to be inapplicable to criminal cases in State v. McEnroe, 174 Wn.2d 795, 802-03, 279 P.3d 861 (2012).

No. 68772-7-I/6

these *ex parte* motions are exempt from the notice requirements of GR 15. GR 15(c)(1).[4]

King County has adopted the *ex parte* motion practice outlined at CrR 3.1(f) as a means for attorneys of indigent parents to obtain expert services and orders to seal the moving papers in dependency and termination cases. The State asserts that this practice is improper because it: (1) unfairly denies the other parties notice and opportunity to be heard under GR 15, (2) violates the public's right to open proceedings, and (3) improperly applies criminal rules to civil cases. The parents do not dispute that the *ex parte* motion practice at issue in this case does not comply with GR 15. They argue however, that application of

---

[4] GR 15(c)(1) provides:

(c) Sealing or Redacting Court Records.
(1) In a civil case, the court or any party may request a hearing to seal or redact the court records. In a criminal case or juvenile proceedings, the court, a party, or any interested person may request a hearing to seal or redact the court records. Reasonable notice of a hearing to seal must be given to all parties in the case. In a criminal case, reasonable notice of a hearing to seal or redact must also be given to the victim, if ascertainable, and the person or agency having probationary, custodial, community placement, or community supervision over the affected adult or juvenile. No such notice is required for motions to seal documents entered pursuant to CrR 3.1(f) or CrRLJ 3.1(f).

CrR 3.1(f)(1)(2) provide:

(f) Services Other Than a Lawyer.
(1) A lawyer for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in the case may request them by a motion to the court.
(2) Upon finding the services are necessary and that the defendant is financially unable to obtain them, the court, or a person or agency to which the administration of the program may have been delegated by local court rule, shall authorize the services. The motion may be made ex parte and, upon a showing of good cause, the moving papers may be ordered sealed by the court and shall remain sealed until further order of the court. The court, in the interest of justice and on a finding that timely procurement of necessary services could not await prior authorization, shall ratify such services after they have been obtained.

6

the rule to the motions at issue impinges on their due process rights to effective assistance of counsel and a fair trial. They contend that providing notice to the State of experts with whom they intend to consult, in advance of a determination to call the expert as a witness, compromises their ability to prepare for trial and causes them to be treated differently than parents with the means to obtain those services without public assistance. For the reasons set forth below, we agree with the parents.

I.

Resolution of this case requires interpretation of a court rule, which we review de novo. State v. McEnroe, 174 Wn.2d at 800.

In determining the precise nature of due process rights to which parents in termination proceedings are entitled and whether GR 15(c)(1) unduly infringes upon those rights, we balance: (1) the private interest affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest which militates against the use of the challenged procedure. In re Welfare of S.E., 63 Wn. App. 244, 249-50, 820 P.2d 47 (1991).

We first consider the private interest affected by the termination proceeding. Here, it is indisputable that the interest of the parents is great. It is well-established that parents have a fundamental liberty interest in the custody and care of their children, protected by the due process requirements of the Fourteenth Amendment and article I, section 3 of the Washington State

Constitution. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Skinner v. State of Okla., ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed.2d 1655 (1942), overruled in part on other grounds in Edelman v. Jordan, 415 U.S. 651, 652, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); In re Dependency of J.B.S., 123 Wn.2d 1, 12, 863 P.2d 1344 (1993); In re Luscier, 84 Wn.2d 135, 139, 524 P.2d 906 (1974). In termination cases, this liberty interest gives rise to the full panoply of due process safeguards. In re Grove, 127 Wn.2d 221, 232, 897 P.2d 1252 (1995); In re Luscier, 84 Wn.2d at 137, abrogated in part by Lassiter v. Dep't of Soc. Servs. of Durham County, N. C., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). These safeguards include the right to a fair trial and the right to effective legal assistance. RCW 10.101.005; In re Welfare of J.M., 130 Wn. App. 912, 922, 125 P.3d 245 (2005); In re Luscier, 84 Wn.2d at 139.[5]

Attorneys representing parents in termination proceedings are charged with responding to allegations of parental deficiencies and refuting testimony from lay and expert witnesses. Counsel is ineffective if he or she has not had the opportunity to interview the State's witnesses, or had the opportunity to obtain independent evaluations to rebut those obtained by the State. In re Dependency of V.R.R., 134 Wn. App. 573, 585-86, 141 P.3d 85 (2006).

---

[5] In re Luscier's Welfare was decided on state and federal constitutional grounds. Insofar as it interpreted a right to counsel stemming from the federal constitution, the decision was overruled by Lassiter.

The State contends that parents' interest in effective legal assistance, and thus, a fair trial, is not implicated by the GR 15(c)(1) notice requirement. Specifically, the State claims that defense requests for public funding for expert services are not inherently confidential; therefore, any disclosure of such requests incidental to notice under GR 15(c)(1) does not prejudice the parents' rights. The State cites State v. Mendez, 157 Wn. App. 565, 238 P.3d 517 (2010); In re Pers. Restraint of Gentry, 137 Wn.2d 378, 389, 972 P.2d 1250 (1999); and the Public Records Act, RCW 42.56.904. This authority is distinguishable and therefore unpersuasive.

In Mendez, 157 Wn. App. at 565, we held that attorney billing records did not warrant post-trial sealing to protect the defendant's right to a fair trial. Our Supreme Court reached a similar conclusion in In re Gentry, 137 Wn.2d at 378, in which it considered the validity of post-trial orders to unseal documents related to motions for public funding for investigative services. In each case, the appellate court affirmed the trial court's ruling that the defendant presented insufficiently compelling circumstances to warrant continued sealing of court records. Mendez, 157 Wn. App. at 565; In re Gentry, 137 Wn.2d at 378. Both cases are distinguishable because, in each case, the defense motions to continue sealing the records were brought after the defendants had been tried and convicted. Mendez, 157 Wn. App. at 586; Gentry, 137 Wn.2d at 389-90. The holding in each case rests on the fact that the defendant no longer had any interest in a fair trial to weigh against the public's right to open proceedings. Ibid.

In contrast, here the defense motions to seal were brought during the course of trial when the parents' right to a fair trial was still very much alive.[6]

The State's reliance on the Public Records Act is also misplaced. The provision cited calls for public disclosure of attorney invoices, redacted as may be necessary to protect work product. RCW 42.56.904. In considering this authority, we cannot overlook the inherent differences between attorney invoices and motions for public funding of expert services. Once redacted of work product, attorney invoices are merely accounting documents, unrelated to any issue to be determined at trial. In contrast, motions for public funding for expert witnesses and the supporting documentation will almost certainly contain confidential communications, work product, and clues about trial strategy. The State suggests that this problem can be mitigated by filing of the motions under seal, while still providing notice and opportunity to all parties. In its opening brief, the State notes:

> nothing in GR 15 prevents [parents] from filing their motions for expert expenses, with notice to all parties but without attorney-client and/or work product information, and asking the court prospectively to permit the filing of a declaration under seal or that redacts those portions containing mental impressions, theories, opinions, or legal advice...The court could then conduct an in-camera review of the particular pleading at issue and redact those portions that would otherwise reveal attorney-client confidences or work product, leaving the rest of the pleading unsealed. This would give all parties

---

[6] Mendez and Gentry also involved different types of records (attorney billing and motions for public funding for investigative services) than those present here. Neither type of document implicates the rights to counsel and fair trial at issue in this case. As discussed infra., attorney billing invoices are merely accounting documents, unrelated to any issue to be determined at trial. Requests for funding for investigative services are much more generalized and vague than requests for expert services.

10

> the requisite notice of the motion...so they would have the opportunity provided in GR 15 to object.

Brief of Appellant (App. Br.) at 23-24. However, assuming that the motions were sufficiently redacted to protect confidential information and work product, it is difficult to imagine, and the State offers no suggestion, what meaningful notice the opposing parties would be entitled to under GR 15(c)(1). As the trial court noted in its order, "the only notice the indigent parent could provide would be that the parent is seeking the sealing of a motion, declaration and order without disclosing the nature of the motion other than, perhaps, that it concerns services for an indigent parent other than counsel; such notice is meaningless since the only objection the government could make is a general objection." Memorandum Opinion at 5.

Additionally, revelation of the names or expertise of potential experts would be prejudicial to parents because, once potential experts are identified, they are available for questioning by the State. Thus, disclosure of such information would provide a considerable tactical advantage to the State, which would not exist in cases involving parents with means, who need neither petition the court to obtain expert services, nor disclose the identity of an expert witness until they decide the expert will testify at trial.

In this case, strict adherence to the GR 15(c)(1) notice requirement would present defense counsel with a choice between, on the one hand, competently and diligently seeking independent expert services while risking disclosure of confidential information and, on the other hand, forgoing their duty to obtain

independent evaluations in order to protect confidences and trial strategy. This choice limits counsel's ability to be an effective advocate and impinges the parents' right to counsel.

Next, we consider the risk of error created by enforcement of the GR 15(c)(1) notice requirement. The State argues that notice and opportunity to object would actually improve the trial court's ability as fact finder. We disagree. As discussed above, a notice requirement would likely chill defense use of experts, at least in cases where the value of the expert was outweighed by the tactical advantage of maintaining confidentiality. This result limits the relevant information available to judges and increases the risk of ill-informed decisions regarding parents' fitness.

Lastly, we consider the governmental interests that support notice under GR 15(c)(1). The State has an interest in protecting the best interests of the child. In re Welfare of Sumey, 94 Wn.2d 757, 763, 621 P.2d 108 (1980). A child's welfare is the court's primary consideration. In re Sego, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). Children involved in termination proceedings have the right to safety and well-being, a right to speedy resolution, and a right to a permanent home early in the process. Id.; RCW 13.34.020. Consequently, when the rights of parents and the welfare of their children are in conflict, the welfare of the minor children must prevail. In re Dependency of J.B.S., 123 Wn.2d 1, 8-9, 863 P.2d 1344 (1993); In re Sego, 82 Wn.2d at 738 (citing In re Day, 189 Wash. 368, 65 P.2d 1049 (1937); RCW 13.34.020.

The State argues that if it does not receive notice of an indigent parent's motion for expert services, the children's interest in prompt resolution of the termination proceedings is at risk. We disagree. Children have an interest in both a prompt and fair resolution of the proceedings, including the right to remain with fit parents when possible. See, In re Adoption of Lybbert, 75 Wn.2d 671, 453 P.2d 650 (1969) ("It is the general rule that courts zealously guard the integrity of the natural relation of parent and child"). It follows that children involved in termination proceedings have an interest in their parents' ability to properly make a case for preservation of their familial ties, including a meaningful opportunity to obtain expert services without risk of disclosure to opposing parties.

The State also has an interest in the expedient resolution of cases, the orderly administration of justice, and the careful stewardship of public funds. The State argues that the *ex parte* orders at issue here unfairly increase the burden to the State, CASA, and guardian ad litem in termination cases because they must depose and otherwise prepare to address testimony offered by experts even though they had no say in whether the experts were appointed. The State does not explain why these realities of trial preparation should weigh more in our analysis than the experts' ability to aid the fact finder in finding a resolution that is most favorable to the best interest of the child. We cannot conclude that they do. And, while we credit the State's argument that the *ex parte* practice seen here is linked to the discovery violations, delay, and possible waste of public funds

evident in this case, on balance, this interest does not outweigh the fundamental liberty interests of the parents and the best interests of the child.[7]

In summary, the due process protections afforded to parents seeking expert and other services in termination proceedings and the increased likelihood of error stemming from the chilling effect the GR 15(c)(1) notice requirement has on the ability to seek these services outweigh the countervailing interests. We therefore find the motions at issue in this case exempt from the rule's notice requirements.

## II.

Next, the State contends that King County's practice of granting *ex parte* orders to seal violates the public's right to open proceedings. Article I, section 10 of the Washington State Constitution provides that "[j]ustice in all cases shall be administered openly. . . ." The presumption of open proceedings and court records extends to cases involving the termination of parental rights. See, In re Dependency of J.A.F., E.M.F., V.R.F., 168 Wn. App. 653, 278 P.3d 673 (2012) (closing the courtroom to take the testimony of one witness in a termination proceeding violates article 1, section 10). Although openness is presumed, it is not absolute. Dreiling v. Jain, 151 Wn.2d 900, 909, 93 P.3d 861 (2004). "The

---

[7] In this case, several *ex parte* orders authorizing public funding for experts were entered well after the discovery deadline had passed and public funds were expended for experts whose testimony was subsequently excluded from trial. Trial courts are admonished to consider the established case schedule and discovery rules in determining whether to authorize public funding for expert services. Motions that do not include this information or are made beyond the established discovery cut-off dates should ordinarily be denied.

public's right of access may be limited to protect other significant and fundamental rights, such as a defendant's right to a fair trial." Id.

In determining whether sealing is appropriate, Washington courts apply and weigh the five factors set forth in Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 640 P.2d 716 (1982). Dreiling, 151 Wn.2d at 900 (extending the Ishikawa analysis for court closure to request to seal court records); accord, Rufer v. Abbot Laboratories, 154 Wn.2d 530, 543-44 n.7, 114 P.3d 1182 (2005). "Generally, we review a trial court's decision to seal records for abuse of discretion. [8] King v. Olympic Pipe Line Co., 104 Wn. App. 338, 348, 16 P.3d 45 (2000); accord Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). However, if the trial court's decision rests on an improper legal rule, the appropriate course of action is to remand to the trial judge to apply the correct rule." Dreiling v. Jain, 151 Wn.2d at 907-08 (citing King, 104 Wn. App. at 369).

The State asserts that none of the Ishikawa factors was met and, thus, the public's right to open proceedings was violated in this case. The trial court did not address each of the factors explicitly in either the orders to seal or in its memorandum opinion. Nevertheless, it is evident from the language of the orders

---

[8] "An abuse of discretion occurs when a decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' A discretionary decision rests on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is 'manifestly unreasonable' if 'the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take." Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (internal citations omitted).

that he considered them.[9] Because the record indicates that all five Ishikawa

factors were satisfied, we find no abuse of discretion.

Under Ishikawa, the proponent of sealing must first make a showing of

need. Our Supreme Court stated, in part:

> The proponent of closure and/or sealing must make some showing of the need therefore. . . . In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.
>
> The quantum of need which would justify restrictions on access differs depending on whether a defendant's ... right to a fair trial would be threatened. When closure and/or sealing is sought to protect that interest, only a "likelihood of jeopardy" must be shown. Kurtz, 94 Wn.2d at 62, 593 P.2d 1330. See Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 400, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608 (1979) (Powell, J., concurring).

Id. at 37. The State argues that there was no "need for sealing" the motions in

this case. However, as discussed above, the GR 15(c)(1) notice requirement

impinges a parent's right to the effective assistance of counsel in termination

proceedings. It is clear from the memorandum opinion that the judge considered

this fact when determining to seal the records in this case. We find sufficient

---

[9] In Rufer, 154 Wn.2d 530, our Supreme Court reviewed a decision regarding sealing of court records. Both the Superior Court and Court of Appeals rulings in that case occurred prior to our Supreme Court's clarification in Dreiling, 151 Wn.2d at 913-14, that Ishikawa set forth the proper standard for sealing court records. Nevertheless, the Supreme Court upheld the lower courts' rulings, finding that, "although Dreiling was not yet decided (and thus courts were not yet explicitly directed to apply Ishikawa to civil proceedings), the trial court properly applied the compelling interest test to most of the records at issue and provided a sufficient rationale for its decision... Thus, although the trial court did not specifically apply the Ishikawa analysis... it effectively did so by allowing all parties to assert their respective interests, weighing those interests, and applying the compelling interest standard in making its determination." Rufer, 154 Wn.2d at 550-51. Accordingly, we look to the record for indicia that Judge Kessler applied the Ishikawa analysis in this case even though he did not specifically mention the standard in his orders or memorandum opinion.

showing to meet the "likelihood of jeopardy" threshold under Ishikawa, 97 Wn.2d at 37.

The second Ishikawa factor is:

"Anyone present when the closure (and/or sealing) motion is made must be given an opportunity to object to the (suggested restriction)". Kurtz, 94 Wash.2d at 62, 615 P.2d 440.

Id. at 38. The State contends that factor two was not satisfied because all parties were not notified of the parents' *ex parte* motions and given opportunity to object. We reject this contention for two reasons.

First, for the reasons discussed above, a notice requirement under the circumstances in this case impinges on parents' constitutional rights to counsel and a fair trial. Second, this Ishikawa factor is addressed to members of the general public, giving anyone present in the courtroom the opportunity to be heard on the proposed closure or sealing. It does not speak to the State's particular objection here, that as a party to the litigation they were not given notice of the motion, an objection more properly rooted in GR 15(c)(1). See Rufer, 154 Wn.2d at 549 ("[W]e have interpreted this constitutional mandate as a means by which the public's trust and confidence in our *entire judicial system* may be strengthened and maintained.") (citing Allied Daily Newspapers of Washington v. Eikenberry, 121 Wn.2d 205, 211, 848 P.2d 1258 (1993)).

The third requirement under Ishikawa is that sealing, if necessary, must be accomplished in the least restrictive means available to effectively protect the threatened interests. Ishikawa, 97 Wn.2d at 38. The State argues that there was

17

a less restrictive means available to protect the parents' rights in this case.
Specifically, it asserts that, instead of the *ex parte* process used here, the court
could conduct an in-camera review of the documents sought to be sealed and
make specific findings directed at the basis for sealing or redaction of the
documents. See former KCLGR 15(c)(3) (2010).[10] This proposed process is
nearly identical to that set out in CrR 3.1(f), which was applied in this case. The
difference is that under KCLGR 15(c)(3) notice is required pursuant GR 15(c)(1),
while CrR 3.1(f) is exempt from the notice requirement. Because a notice
requirement regarding the motions at issue in this case is inconsistent with
parents' due process safeguards, we disagree that the State's proposed less
restrictive alternative is a workable one.

The fourth Ishikawa factor mandates:

> "The court must weigh the competing interests of the defendant
> and the public," Kurtz at 64, 615 P.2d 440, and consider the
> alternative methods suggested. Its consideration of these issues
> should be articulated in its findings and conclusions, which
> should be as specific as possible rather than conclusory. See
> People v. Jones, 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418
> N.Y.S.2d 359 (1979).

Ishikawa, 97 Wn.2d at 38. The record does not contain extensive findings with
respect to this factor. Nevertheless, it is apparent from the court's memorandum

---

[10] KCLGR 15 was substantially amended during the pendency of this appeal. The new rule, which took effect on September 2, 2013 codifies the *ex parte* practice used here, though it does not mention whether defense must provide notice to the other parties of such motions. The State did not address the revision in its Statement of Additional Authorities, filed with the Court September 16, 2013.

opinion that it considered the competing interests in this case. Memorandum opinion at 3 states two justifications for sealing:

1. the motion, declaration and order contain privileged information including disclosures by the client to counsel and work product...and

2. to keep from an adverse party the name of an expert who may not be used by the defense, so that the adverse party does not obtain an advantage that the adverse party would not have if the parent were wealthy or if the funding came from the budget of the attorney. . . .

These findings are an apparent effort by the court to balance the parents' due process protections with the public's right to open proceedings. Therefore, we find that the fourth Ishikawa factor is satisfied.

The fifth and final Ishikawa factor requires that orders to seal records be limited in duration with a burden on the proponent to come before the court at a time specified to justify continued sealing. Ishikawa, 97 Wn.2d at 39. The trial court expressly limited the duration of his orders to seal in his Memorandum Opinion at 5. Ishikawa factor five is satisfied.

The trial court did not abuse its discretion in applying the Ishikawa factors.

III.

Lastly, the State argues the trial court exceeded its authority when it applied CrR 3.1(f), a criminal rule, to the motions at issue in a civil case. The State contends that in so doing, the trial court created a new court rule by judicial fiat and violated normal rule-making procedures. We review a challenge to the authority of the court de novo. State v. W.S., 176 Wn. App. 231, 236, 309 P.3d

589 (2013) (citing State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

The State cites In re Pers. Restraint of Carlstad, 150 Wn.2d 583, 80 P.3d 587 (2003), in support of its argument. In Carlstad and the companion case, State v. McLean, the Supreme Court refused to adopt the "mailbox rule" for determining whether a pleading was timely filed. The court concluded it would not because the pertinent court rules defined with specificity that "[f]iling occurs when the papers are filed with the clerk of the court[.]" Id. at 592. The court noted that any change in the rule should be accomplished by normal rule making procedures and not "by judicial fiat." Id. at 592, n.4.

By contrast, in this case, there is no specific civil or juvenile court rule that establishes a procedure for indigent parents in termination proceedings to obtain public funding for expert services. As the trial court correctly observed, where the criminal court rules are silent on the issue at hand, we look to the civil rules for guidance. State v. Cronin, 130 wn.2d 392, 397 (1996), State v. Clark, 129 Wn.2d 805, 815 (1996), State v. Hackett, 122 Wn.2d 165, 170 (1993), State v. Gonzalez, 110 Wn.2d 738, 744 (1988). Here, where the civil and juvenile court rules are silent on the issue, the trial court properly looked to the criminal rules

20

for guidance.[11] Thus, Carlstad is distinguishable and not controlling.

The State also claims the court "ignored the significant differences between juvenile dependency/termination cases and criminal proceedings." Brief of Appellant at 17. While there are indeed differences between criminal, civil and juvenile court proceedings, those differences have little bearing on the issues presented in this case. The purpose of the court rules, whether civil or criminal, is to facilitate the ability of the parties to receive a fair and just determination in the case before the court.[12] Because no civil or juvenile rule provided a process for

---

[11] In addition, although not cited by the parties, RCW 2.28.150 provides additional authority for the trial court to look to the criminal court rules for guidance. That statute provides:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

We have held that RCW 2.28.150 "is sufficiently broad to supply any deficiency of procedure which has been omitted in the primary grant of jurisdiction." State ex rel. McCool v. Small Claims Court of Jefferson County Dist. Court of Port Townsend, 12 Wn. App. 799, 802, 532 P.2d 1191 (1975). In addition, our Supreme Court has made clear that statutes and court rules should be treated equally for the purposes of RCW 2.28.150. In re Cross, 99 Wn.2d 373, 380-81, 662 P.2d 828 (1983).

[12] See CR 1:

> These rules govern the procedure in the superior court in all suits of a civil nature whether cognizable as cases at law or in equity with the exceptions stated in rule 81. They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action. (Emphasis added.)

See CrR 1.2:
> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay. (Emphasis added.)

21

indigent parents in termination proceedings to confidentially obtain funding for expert services, the trial court properly relied on an appropriate criminal rule.

In summary, we hold that because the notice requirements of GR 15(c)(1) do not adequately safeguard the due process guarantees of indigent parents involved in termination proceedings when seeking public funding for expert services and because no other civil or juvenile court rule provided a process for seeking such funding, the trial court properly looked to CrR 3.1(f) to fashion an appropriate process. We further hold that the trial court properly applied the Ishikawa factors when it sealed the records at issue in this case.

*Affirmed.*

Spearman, C.J.

WE CONCUR:

Dependency of M.H.P., 68772-7-I

BECKER, J. (dissenting) — King County Superior Court secretly orders the expenditure of public funds to pay for expert witnesses requested by indigent parents in termination and dependency cases. The majority's endorsement of this practice gives short shrift to the interests of the children and taxpayers affected by it. It insulates judges from the constitutional presumption that courts do business in the open. And the majority unwisely expands the court's authority to create its own procedures outside the rule-making process. I respectfully dissent.

1. The children

Thanks to decades of committed effort by the three branches of government as well as many private agencies and citizen advocates, delay in finding safe and permanent homes for abused and neglected children is no longer an accepted norm in Washington. Statutes impose deadlines. See, e.g., RCW 13.34.070(1) (fact-finding hearing must be held no later than 75 days after the filing of the dependency or termination petition, absent special circumstances); RCW 13.34.138(1) (court must review the status of all dependent children at least every six months); RCW 13.34.145(1)(a) ("permanency planning hearing" must be held if child has been out of the home for at least nine months and no permanent placement decision has been made). Courts enforce the deadlines, recognizing that although one year may not be a long time for an adult decision maker, "for a young child it may seem like forever." In re Dependency of A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988), review denied, 112

Wn.2d 1017 (1989). Children's advocates are trained to keep these cases moving so that children will not remain long "in the limbo of foster care." A.W., 53 Wn. App. at 33.

The secret ex parte motion practice takes a step backward. It is a formula for unnecessary delay and expense, as the facts of this case illustrate. A judge rubber-stamped orders authorizing payment of expert witnesses and sealed the applications and the orders. Because the State was not made aware of the request, the judge was unaware that the discovery deadlines for witness disclosure had long passed, trial was imminent, and allowing the witnesses to testify would require a lengthy continuance.

The judge was acting in accordance with an established, though secret, practice. The practice came to light only when a child's CASA (Court Appointed Special Advocate) accidentally discovered the sealed orders. That discovery led to the State's motion to vacate the sealed orders, and in turn to the memorandum opinion under review. The memorandum opinion denied the State's motion to vacate the sealed orders and offered a justification for the secret ex parte practice.

## 2. The constitutional requirement for open courts

Court records and courtrooms are presumptively open. The presumption is not supposed to be easy to overcome. Secrecy is permitted only when a trial court makes an individualized finding that closure is justified. State v. Chen, 178 Wn.2d 350, 355-56, 309 P.3d 410 (2013). The rule that implements the presumption of openness is GR 15. Here, that rule was not followed.

In a civil case, any party may request a hearing to seal or redact court records under GR 15(c). *Notice of the hearing must be given to adverse parties.* The court may grant the request to seal or redact *only after making findings* "that the specific sealing or

redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record." GR 15(c)(2). The secret ex parte procedure in King County is out of compliance with GR 15(c) in two ways. First, no notice was given to adverse parties. Second, no individualized findings were made of compelling concerns justifying secrecy.

The majority asserts that the notice required by GR 15(c), if sufficiently redacted to give parents a meaningful opportunity to consult privately with expert witnesses, would be meaningless. Majority at 11. In general, I agree that indigent parents must have a meaningful opportunity to consult with potential expert witnesses without disclosing to the State the names of the experts or the nature of the consultation. The question, however, is whether a secret ex parte process divorced from the discovery deadlines is the only way to give parents that opportunity. The answer is no. The State and the children's advocates could have simply been notified of the date of a hearing at which the court would consider a request by the parents for public funds in this particular case. The State could then have informed the court about the case schedule, which then should have caused the court to ask some questions and enter case-specific findings before signing the order. Notice to adverse parties is not only meaningful, it is essential because without it, the court is making a decision based on one-sided information.

In government, where secrecy sets in, scandal follows. Public funds were wasted in this case. The money was spent to hire new witnesses well after the deadline for disclosure and discovery. Because of the prejudice caused by the late disclosure,

3

the trial judge excluded the witnesses and their work was for naught. This would not have happened if there had been notice to adverse parties as required by GR 15.

Not only did the court order the sealing of the request for funds without giving notice to adverse parties, the court also ignored the requirement in GR 15(c)(2) for written findings that identify the "compelling privacy or safety concerns that outweigh the public interest in access to the court record." The majority glides over this failing with the rationalization that the memorandum opinion we are reviewing reflects due consideration of the factors in Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 640 P.2d 716 (1982). The memorandum opinion does not cure the defect. It was written months after the sealing orders. It does not mention the Ishikawa factors and does not reflect a case-specific analysis. The purpose of the memorandum opinion is to defend the existence of a streamlined process that *categorically excludes* these ex parte applications from the constitutional presumption for open courts.

A streamlined process is likely easier for the court to administer and more convenient for the parents, but it sacrifices openness, a value that has a higher priority. Whether a particular application and order for public funds should be sealed, redacted, or left open should be decided on a case-by-case basis with case-specific findings.

### 3. The rule-making process

The majority claims the right to borrow CrR 3.1(f), an established rule for *criminal* cases, and apply it in these *civil* cases.

CrR 3.1(f) allows ex parte applications for money to pay defense expert witnesses in *criminal* cases; the rule also permits the sealing of the moving papers upon a showing of good cause. Motions brought under the *criminal* rule are exempt from the

notice requirement of GR 15(c). The 1986 comment to CrR 3.1(f) explains that it was intended to ensure that the obligation to show a need for publicly funded services does not force an indigent defendant to reveal defense tactics to the prosecution, a disadvantage not experienced by a defendant who can pay for services.

Without inviting comment from advocates for children, King County Superior Court secretly decided to apply the *criminal* rule in dependency and termination cases. The memorandum opinion under review adopts the rationale of the comment to the *criminal* rule. "This court concludes that CrR 3.1(f) applies to dependency and termination cases as the Juvenile Court rules are silent on the issue at hand and the need for a process shielding parents' needs for experts from the voyeuristic eyes of the government *is identical.*" (Emphasis added.)[1]

The need for a secret process in dependency and termination cases is *not* identical to the need in criminal cases. In a criminal case, the defendant holds both the right to speedy trial and the right to present a defense. The defendant can decide for himself without affecting the rights of another person whether it is worth giving up his right to a speedy trial for the extra time it takes to consult experts. But here, the child is a party. The child's interest in bringing dependency status to an end may conflict with the parent's desire to consult more experts. Any time a judge is asked to make a decision that will potentially prolong the proceedings, the child's advocates must be notified and given the opportunity to be heard.

---

[1] In re Dependency of M.H.P., No. 11-7-02455-3, at 5 (King County Super. Ct., Wash. Apr. 10, 2012), memorandum opinion attached to amended notice of appeal, In re Dependency of M.H.P., No. 68772-7-I, filed July 9, 2012.

A second difference is that in dependency and termination cases, typically the parents have already been receiving professional services for some time. A judge who is requested to authorize funds for more professional evaluations needs objective information about the nature and adequacy of services already rendered. The judge will not receive such information in a secret ex parte proceeding.

In short, CrR 3.1(f) does not fit this situation and should not have been applied as if it did. The majority recognizes that ordinarily new court rules are to be devised by the rule-making process, not by "'judicial fiat.'" Majority at 20, quoting In re Pers. Restraint of Carlstad, 150 Wn.2d 583, 592 n.4, 80 P.3d 587 (2003). The rule-making process makes it possible for all persons potentially affected to participate and have their interests considered. Because King County Superior Court implemented the secret motion practice informally at the request of indigent parents without inviting public comment, only the parents' interests were considered. The interests of the children and the State were not.

The majority concludes that the superior court acted within the authority provided by RCW 2.28.150. That statute permits a court to adopt "'any suitable process'" in the exercise of its jurisdiction "'if the course of proceeding is not specifically pointed out by statute.'" Majority at 21 n.11, quoting RCW 2.28.150. As discussed above, the appropriate course of proceeding is already pointed out by GR 15. The superior court exceeded its authority by adopting an unsuitable *criminal* rule for prospective application in all dependency and termination cases without going through a formal, open rule-making process.

The majority "admonishes" the trial judges who issue the secret orders to do a better job of coordinating with established case schedules. Majority at 14 n.7. Admonishment is an ineffective remedy. The secret practice needs to be ended.

I would reverse the order denying the motion to vacate and hold that GR 15(c) and Ishikawa apply to requests for public funds for expert witness services in dependency and termination cases.

Becker, J.