# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70968-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| R.D.M. (DOB: 11/01/97), | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: February 17, 2015 |
| | ) | |

Cox, J. — R.D.M. appeals his disposition order, claiming that the trial court abused its discretion when it excluded the testimony of his proposed expert witness and when it precluded him from impeaching the victim's mother. Because the trial court did not abuse its discretion in either respect and there was no violation of his rights to present a defense, to confront witnesses, or to due process, we affirm.

In July 2012, C.M. disclosed to her mother that R.D.M., her 14 year old neighbor, touched her "private place." C.M. was three years old at the time. C.M.'s mother shared the information with a neighbor who was a mandatory reporter, and the neighbor reported it to authorities.

A few weeks later, a child forensic interview specialist with a local Child Advocacy Center (CAC) interviewed C.M. C.M. told the interview specialist that

R.D.M. touched her twice—once at her house and once at his house. This interview was recorded onto a DVD.

The State charged R.D.M., by amended information, with two counts of child molestation in the first degree based on these two incidents. R.D.M. denied that any inappropriate touching occurred.

Prior to trial, R.D.M. indicated that he would be offering the testimony of Dr. Daniel Rybicki, a clinical psychologist, who had assessed the CAC interview of C.M. The State moved in limine to exclude this testimony, arguing that Dr. Rybicki's report contained legal conclusions and opinion testimony outside the scope of his expertise. R.D.M. provided the trial court with a copy of Dr. Rybicki's report, and the court heard testimony by Dr. Rybicki in an offer of proof. R.D.M. moved to have Dr. Rybicki qualified as an expert. Following argument, the trial court denied R.D.M.'s motion.

At the bench trial that followed, R.D.M. cross-examined C.M.'s mother about several statements she allegedly made to neighbors regarding the details of the incidents. C.M.'s mother denied making these statements. During the defense's case, R.D.M. attempted to call witnesses to impeach C.M.'s mother on these matters. The State objected, and the court sustained the objections.

At the conclusion of the trial, the court adjudicated R.D.M. guilty of both charges. A disposition order followed.

R.D.M. appeals.

## EVIDENTIARY RULINGS

R.D.M. argues that the court abused its discretion when it "excluded his highly qualified expert on suggestive child interview techniques" and when it "excluded multiple defense witnesses who would have impeached [C.M.'s] mother."[1] We disagree with both of these arguments.

We review evidentiary rulings for abuse of discretion.[2] An appellate court will overturn the trial court's rulings on the admissibility of evidence only if its decision was "manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons."[3] "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard."[4]

*Exclusion of Expert Testimony*

First, R.D.M. argues that the court abused its discretion when it excluded testimony from Dr. Rybicki, a proposed defense expert witness. The trial court's decision was not an abuse of discretion.

"Under ER 702, the court may permit 'a witness qualified as an expert' to provide an opinion regarding 'scientific, technical, or other specialized

---

[1] Appellant's Opening Brief at 1.

[2] State v. Willis, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004); State v. Campbell, 103 Wn.2d 1, 20, 691 P.2d 929 (1984).

[3] Gorman v. Pierce County, 176 Wn. App. 63, 84, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010 (2014).

[4] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

knowledge' if such testimony 'will assist the trier of fact.'"[5] Admissibility under this rule involves a two-part inquiry: "'(1) does the witness qualify as an expert; and (2) would the witness's testimony be helpful to the trier of fact.'"[6] Because these requirements are in the conjunctive, the absence of either is fatal.

"'Qualifications of expert witnesses are to be determined by the trial court within its sound discretion, and rulings on such matters will not be disturbed unless there is a manifest abuse of discretion.'"[7] A witness may be qualified as an expert by knowledge, skill, experience, training, or education.[8] An expert may not testify about information outside his area of expertise.[9]

Where it is debatable whether the proffered testimony would be relevant and helpful to the trier of fact, it is not an abuse of discretion to exclude the evidence.[10]

Here, R.D.M. sought to have Dr. Rybicki, a clinical psychologist, testify as to "the adequacy of the victim interview techniques conducted by [the CAC

---

[5] State v. Yates, 161 Wn.2d 714, 762, 168 P.3d 359 (2007) (quoting ER 702).

[6] State v. McPherson, 111 Wn. App. 747, 761, 46 P.3d 284 (2002) (quoting State v. Guilliot, 106 Wn. App. 355, 363, 22 P.3d 1266 (2001)).

[7] In re Det. of A.S., 138 Wn.2d 898, 917, 982 P.2d 1156 (1999) (quoting Oliver v. Pac. Nw. Bell Tel. Co., 106 Wn.2d 675, 683, 724 P.2d 1003 (1986)).

[8] ER 702.

[9] Katare v. Katare, 175 Wn.2d 23, 38, 283 P.3d 546 (2012).

[10] See State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

interviewer]."[11] The subject interview had been recorded onto a DVD. The trial

court excluded Dr. Rybicki's testimony for two reasons—first, because Dr.

Rybicki did not possess the necessary qualifications to critique the CAC

interview, and second, because his testimony was not helpful to the trier of fact.

We address the first reason and need not reach the second.

The trial court determined that Dr. Rybicki did not possess the necessary

qualifications to critique the CAC interview. In its oral ruling denying R.D.M.'s

motion, the trial court stated its concern that Dr. Rybicki lacked the appropriate

training to conduct such a critique:

> It's denied because one of the things I'm concerned about is I'm
> very sensitive to the concept of peer review. Peer review means
> that the professionals are on the same footing and they are there to
> help each other. That critique is a form of help.
>     I find it really difficult to see how [Dr. Rybicki] could be
> considered a peer reviewer of people who have done the 40-hour
> training and he has never done it. He indicated from his own
> testimony that he is not aware of the 2012 protocol changes, having
> never reviewed it. He is totally unaware of it. I find it sort of
> puzzling that now he is going to come in and critique someone who
> is operating under that protocol.
>     The other thing he indicated in his testimony is that he has
> never done a CAC interview. That's what he said. I didn't put the
> words in his mouth. That's the topic we are dealing with.[12]

Additionally, in its written findings, the trial court again focused on these

deficiencies in Dr. Rybicki's qualifications. Among the court's criticisms were that

Dr. Rybicki did not undergo required training in the "Harborview Method" which is

the standard CAC protocol in Washington, he had not reviewed the 2012

---

[11] Clerk's Papers at 167.

[12] Report of Proceedings (Sept. 24, 2013) at 95-96.

changes to that protocol, he had never conducted a CAC interview, and he was not peer reviewed. The following written finding of fact reflects this:

> 2. [R.D.M.] . . . asked the Court to hear Dr. Rybicki's testimony on a critique of the child interview done by [the CAC interviewer]. The standard CAC protocol is the Harborview protocol, requiring 40 hours of training, which [the CAC interviewer] participated in. [The CAC interviewer] was also peer reviewed and keeps updated on child interview research. In contrast, Dr. Rybicki did not do the Harborview training and is not even aware of the 2012 updates. Dr. Rybicki has never done a CAC interview and is not peer reviewed.[13]

These findings are supported by substantial evidence in the record. Dr. Rybicki testified that he had taken a number of courses on child sexual abuse issues and investigative techniques. But while he had taken a one-day training seminar on the Harborview protocol, he testified that he had not taken the week-long training program on the Harborview protocol. Additionally, he testified that the one-day training seminar on the Harborview protocol was almost 10 years ago.

Dr. Rybicki also testified that while he understood there was a 2012 edition of the Harborview protocol, he had not yet seen the updated 2012 version. Notably, the CAC interviewer testified that while the 2012 updates had not been published, she was using the 2012 updates in her practice.

Dr. Rybicki testified that the type of interview he conducts is different than a CAC interview. He explained that a CAC interview is "earlier in the system" and is focused on a different purpose.

---

[13] Clerk's Papers at 4.

Finally, Dr. Rybicki testified that he had never done a CAC interview and had never worked for a Child Advocacy Center. Thus, he testified that he had never been involved in peer-reviewing a CAC interview, because if he had not been employed by them, and had never been a CAC, then "[he] couldn't then be a peer."

These facts support the trial court's conclusion that Dr. Rybicki was not qualified to critique the CAC interview. Although reasonable minds could differ, a trial court has broad discretion to admit or exclude expert testimony, and this was within the range of acceptable choices.

R.D.M. asserts that Dr. Rybicki was fully qualified to testify as an expert based on his education and training as well as his professional experience. He points out that Dr. Rybicki had received training in 2004 in the Harborview protocol and had reviewed the 2011 protocol updates. And he points out that Dr. Rybicki had done 45 child interviews and had reviewed 35 other interviews of children. These facts are true, and Dr. Rybicki does have some experience and training in the pertinent area. But the trial court found the deficiencies we discussed previously in Dr. Rybicki's qualifications, and those findings are supported by substantial evidence.

R.D.M. argues that any deficiency in the doctor's expertise goes to the weight of his testimony rather than to his qualifications to testify generally, once his basic requisite qualifications were established. But here, the trial court found, within its discretion to do so, that Dr. Rybicki's basic qualifications were not established. Accordingly, whether this court would have made the same choice

and whether R.D.M. disagrees with the trial court's determination is simply not material.

R.D.M. argues that there is no requirement that the proposed expert's qualifications "mirror" the opposing party's expert. But the trial court did not exclude Dr. Rybicki's testimony because it did not mirror the CAC interviewer's. Rather, it relied on several facts that support the conclusion that Dr. Rybicki was not qualified to critique the CAC interview, such as that he had never conducted a CAC interview, had not undergone the 40 hour training, and had not seen the latest standard protocol updates.

R.D.M. argues that "Dr. Rybicki was highly qualified to testify regarding the presence and effect of suggestive questioning in [the CAC interview]" and on the "topic of suggestibility in child sex abuse complainant interviews."[14] This differs from what R.D.M. asserted below that Dr. Rybicki would be testifying about:

> Dr. Rybicki will be testifying as to . . . the adequacy of the victim interview techniques conducted by [the CAC interviewer]. This testimony would encompass the methodology for critique and review of the forensic [CAC] interview, including but not limited to proper interview protocol procedures []including Harborview Washington State Protocol and NIMHD Methods pertaining to the elements required for insuring validity of data collection. Contained in his report are specific criticisms of the forensic [CAC] interview. The report that was previously submitted to the State also notes history and context factors which enter into a properly conducted forensic assessment, and how the current approach by CAC and police investigative interview process fails to consider such elements.[15]

---

[14] Appellant's Reply Brief at 8, 1.

[15] Clerk's Papers at 167-68.

Thus, R.D.M. did not clearly indicate that he sought to have Dr. Rybicki testify about the topic of suggestibility. Rather, he indicated that Dr. Rybicki would testify about the adequacy of the victim interview techniques, including proper interview protocol procedures. This is what the trial court focused on, as it stated that R.D.M. asked the court to hear Dr. Rybicki's testimony *"on a critique of the child interview done by [the CAC interviewer]."*[16] Accordingly, R.D.M.'s arguments about Dr. Rybicki's qualifications on the subject of suggestibility were not preserved below.

Finally, R.D.M. argues that excluding Dr. Rybicki's testimony based on the court's own assessment of credibility was error, because "the fact-finder must be the one to decide what credibility and weight to give to the testimony, *after* hearing that testimony at trial in its admissible form along with cross-examination."[17] But as already discussed, the trial judge also excluded Dr. Rybicki based on his lack of qualifications, and this was a proper exercise of discretion.

Because R.D.M. fails to establish that the court abused its discretion regarding the first prong of the test for admissibility under ER 702, we need not address the second.

---

[16] Id. at 4 (emphasis added).

[17] Appellant's Opening Brief at 17.

9

*Exclusion of Impeachment Witnesses*

R.D.M. next argues that the trial court improperly limited R.D.M.'s impeachment of C.M.'s mother. We disagree.

A witness's prior inconsistent statement, offered to cast doubt on his or her credibility, is not offered to prove the truth of the matter asserted, and thus, is not hearsay and may be admissible to impeach.[18] But generally, "[A] witness cannot be impeached on matters that are collateral to the principal issues being tried."[19]

"In assessing whether a matter is collateral, the reviewing court asks whether 'the fact, as to which error is predicated, [could] have been shown in evidence for any purpose independently of the contradiction.'"[20] Washington Practice explains, "In other words, would the contradicting fact be considered relevant, substantive evidence if offered as such? If the answer is yes, the evidence is admissible."[21]

Here, the trial court properly exercised its discretion when it limited R.D.M.'s impeachment of C.M.'s mother.

On cross-examination, C.M.'s mother denied making several statements. First, C.M.'s mother denied telling her neighbors that C.M. had undergone a rape

---

[18] State v. Williams, 79 Wn. App. 21, 26, 902 P.2d 1258 (1995).

[19] State v. Allen, 50 Wn. App. 412, 423, 749 P.2d 702 (1988).

[20] Id. (alteration in original) (quoting State v. Oswalt, 62 Wn.2d 118, 121, 381 P.2d 617 (1963)).

[21] 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 607.19 (5th ed. 2014).

kit examination. Second, C.M.'s mother denied telling neighbors that R.D.M.'s sisters were present in the room during one of the incidents. Third, she denied telling a neighbor that R.D.M. had touched C.M. on her vagina underneath her clothes. Fourth, C.M.'s mother denied telling a neighbor that R.D.M. had penetrated C.M.'s vagina with his fingers.

During the defense's case, R.D.M. sought to impeach C.M.'s mother on these matters. Specifically, he sought to elicit C.M.'s mother's prior inconsistent statements through the testimony of these neighbors. The trial court sustained the State's objections to this testimony. This was proper, because the testimony constituted impeachment on collateral matters.

Testimony that C.M.'s mother said that C.M. had undergone a rape kit examination and that she said that R.D.M.'s sisters were present during one of the incidents is collateral. In order to prove first degree child molestation, the State was required to prove that R.D.M. had sexual contact with C.M., which is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."[22] Whether C.M.'s mother told a neighbor that C.M. had undergone a rape kit, or whether C.M.'s mother said that R.D.M.'s sisters were present, is not relevant, substantive evidence. Its only purpose was contradiction of C.M.'s mother.

Likewise, testimony from witnesses that C.M.'s mother told neighbors that R.D.M. had touched C.M. underneath her clothes and that he had penetrated C.M.'s vagina with his fingers was also collateral. Defense counsel asserted that

---

[22] RCW 9A.44.010(2); RCW 9A.44.083.

11

this questioning was proper because "[i]t's what [C.M.'s mother] said [C.M.] told her as she related it to the other individual."[23] Thus, R.D.M. sought to challenge C.M.'s mother as a reporter of C.M.'s statements. But as the State points out, defense counsel did not ask C.M.'s mother what C.M. said. Rather, defense counsel asked what *she* said to other people. And any alleged statement C.M.'s mother made regarding those matters is not relevant.

In making its evidentiary rulings, the court carefully reviewed the questions posed by defense counsel as well as C.M.'s mother's answers. And it determined that impeachment was improper, because defense counsel's questions did not ask what C.M. said. Rather, the questions only asked for C.M.'s mother's impressions, which were irrelevant. For example, the court stated, "So the problem . . . is that that question does not ask about child hearsay. It doesn't ask what the kid said. It only reports what mom's impressions are. So that's again collateral . . . ."[24] And in another example, "[A]gain, that's not asking her about what the child said. That's asking her about her own impressions or her own recollection. It's not asking her for quotes or to repeat what the child said."[25] The court carefully made such a record for each of these matters.

---

[23] Report of Proceedings (Sept. 24, 2013) at 16.

[24] Id. at 26.

[25] Id. at 27.

In sum, the court properly exercised its discretion when it limited R.D.M.'s impeachment of C.M.'s mother because the testimony constituted impeachment on collateral matters.

R.D.M. argues that these evidentiary errors violated his right to present a defense, his right to confront and cross-examine the State's witnesses, and his right to a fair trial. He is mistaken.

There were no evidentiary errors, as the trial court properly exercised its discretion in its rulings. Moreover, evidentiary errors are generally not of constitutional magnitude.[26] Further, a defendant has no constitutional right to present irrelevant evidence.[27] And R.D.M. was not precluded from presenting otherwise relevant, admissible evidence. In short, R.D.M.'s constitutional arguments are unpersuasive.

R.D.M. also argues that these errors cumulatively denied him a fair trial. The cumulative error doctrine "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial."[28] Here, because there was no error, the cumulative error doctrine does not apply.

Finally, R.D.M. requests that this court remand for a new fact-finding hearing before a different juvenile court if this court reverses his convictions. Because we affirm, we need not further address this argument.

---

[26] State v. Grier, 168 Wn. App. 635, 643 n.16, 278 P.3d 225 (2012).

[27] State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

[28] State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

13

We affirm the order on disposition.

_Cox, J._

WE CONCUR:

_Dwyer, J._          _Appelwick, J._