# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of:

JARED KILLEY,

        Appellant,

and

ELIZABETH KILLEY,

        Respondent.

No. 72932-2-I

DIVISION ONE

UNPUBLISHED

FILED: September 28, 2015

Cox, J. – Jared Killey appeals the parenting plan entered in December 2014. He primarily argues that insufficient evidence supports the court's finding of a history of domestic violence underlying the restrictions it imposed. Because substantial evidence supports the court's finding of a history of domestic violence and the other challenges are without merit, it did not abuse its discretion in imposing restrictions in the plan. We affirm.

Killey and Elizabeth Rodriguez married in 2003.[1] In December 2013, Killey petitioned for dissolution of his marriage with Rodriguez. Killey and Rodriguez have one child together, A.S.K. During a three-day hearing, the court heard testimony from both parties and five witnesses. One witness conducted a domestic violence assessment and another witness conducted a parenting plan

---

[1] We adopt the naming convention that the parties use in their briefing.

evaluation. The court admitted both a domestic violence assessment as well as a parenting plan evaluation in addition to other exhibits.

In December 2014, the court entered a dissolution decree, findings of fact and conclusions of law, an order for child support, and a final parenting plan. In the parenting plan, the court restricted Killey's time with A.S.K. after finding a history of acts of domestic violence.

Killey appeals.

## HISTORY OF ACTS OF DOMESTIC VIOLENCE

Killey argues that insufficient evidence supports the finding of a history of domestic violence. We disagree.

This court reviews for abuse of discretion a trial court's parenting plan.[2] The trial court abuses its discretion when its "'decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'"[3] "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."[4]

---

[2] In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

[3] Id. (quoting In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)).

[4] In re Marriage of Horner, 151 Wn.2d 884, 894, 93 P.3d 124 (2004) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

Trial courts have "broad discretion when fashioning a permanent parenting plan."[5] But their "discretion must be guided by several provisions of the Parenting Act of 1987."[6] This court defers to the "trial judge's advantage in having the witnesses before him or her, which is particularly important in proceedings affecting the parent and child relationship."[7] This court does "not decide the credibility of witnesses or weigh the evidence" on appeal.[8]

RCW 26.09.191(2)(a)(iii) requires limiting a parent's residential time with a child in a parenting plan if the court finds "a history of acts of domestic violence . . . or an assault or sexual assault which causes grievous bodily harm or the fear of such harm." Domestic violence is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."[9] Family or household members include spouses or former spouses "who have a child in common."[10]

Although "a history of acts of domestic violence" is not defined, the phrase "was intended to exclude 'isolated, de minimus incidents which could technically

---

[5] In re Marriage of Katare, 175 Wn.2d at 35.

[6] Id.

[7] In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

[8] Id.

[9] RCW 26.50.010(1)(a).

[10] RCW 26.50.010(2).

be defined as domestic violence.'"[11] Additionally, "the court may not impose limitations or restrictions in a parenting plan in the absence of express findings under RCW 26.09.191."[12] "Mere accusations, without proof, are not sufficient to invoke the restrictions under the statute."[13]

The trial court's findings "must be sufficiently specific to permit meaningful review."[14] More specifically, the trial court's findings of fact and conclusions of law must be "sufficient to suggest the factual basis for the ultimate conclusions."[15] But the court "is not required to make findings of fact on all matters about which there is evidence in the record; only those which establish the existence or nonexistence of determinative factual matters need be made."[16]

"The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence."[17] Substantial evidence consists of "evidence sufficient to persuade a fair-minded person of the truth of the matter

---

[11] In re Marriage of C.M.C., 87 Wn. App. 84, 88, 940 P.2d 669 (1997) (quoting 1987 PROPOSED PARENTING ACT, REPLACING THE CONCEPT OF CHILD CUSTODY, COMMENTARY AND TEXT 29 (1987)), aff'd sub nom., In re Marriage of Caven, 136 Wn.2d 800, 966 P.2d 1247 (1998).

[12] In re Marriage of Katare, 125 Wn. App. 813, 826, 105 P.3d 44 (2004).

[13] In re Marriage of Caven, 136 Wn.2d at 809.

[14] In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986) (internal citation omitted).

[15] In re Marriage of Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001).

[16] LaBelle, 107 Wn.2d at 219.

[17] Chandola, 180 Wn.2d at 642.

4

asserted."[18] More specifically, "[s]ubstantial evidence exists so long as a rational trier of fact could find the necessary facts were shown by a preponderance of the evidence."[19] "The fact that the evidence may be subject to different interpretations does not authorize this court to substitute its findings for those of the trial court."[20]

Here, substantial evidence supports the trial court's finding of a history of acts of domestic violence. The court heard testimony from the parties and other witnesses. Moreover, it admitted several exhibits, including a police report, a petition and order for temporary protection, a domestic violence assessment, and a parenting plan evaluation.

Social worker Debra Hunter was a witness who completed the domestic violence assessment in May 2014. According to her assessment, the first police report was taken in February 2010 after a physical altercation between Rodriguez and Killey. The second police report was taken in December 2013, when Rodriguez reported multiple physical assaults.

Rodriquez obtained a temporary order for protection in January 2014. The order was reissued in February 2014, and the case was transferred to family court services for a domestic violence assessment. The order was later modified, and the last protection order was entered in May 2014.

---

[18] Id.

[19] A.W., 182 Wn.2d at 711.

[20] Peter L. Redburn, Inc. v. Alaska Airlines, Inc., 20 Wn. App. 315, 318, 579 P.2d 1354 (1978).

Hunter's assessment included Rodriguez's description of several domestic violence incidents. Although Killey generally denied assaulting Rodriguez, Hunter reported that Rodriguez's statements were consistent and testified that Killey contradicted himself. Hunter also believed Killey's description of the 2010 altercation not credible.

Hunter also found several examples of a "pattern of control" "that were very concerning and troubling."[21] Based on her assessment, Hunter recommended that Killey obtain "domestic violence perpetrator treatment."[22]

Another social worker, Emily Brewer, testified about her October 2014 parenting plan evaluation. Based on her evaluation, Brewer recommended that Killey "comply with the court order and that his [residential] time be contingent upon his participation in services."[23]

Rodriguez's boyfriend, Kurt Krinke, also testified that Killey became violent during the December 2013 altercation between Killey and Rodriguez, although he did not witness any physical assault. But Krinke stated that Killey pushed A.S.K. in that altercation.

This evidence shows by a clear preponderance of the evidence substantial evidence of a history of acts of domestic violence that the statute requires as a condition for imposing restrictions. Accordingly, the court was required to restrict Killey's residential time in the parenting plan. Thus, the trial

---

[21] Report of Proceedings (November 13, 2014) at 120.

[22] Id. at 117, 120.

[23] Id. at 146-47.

6

court did not abuse its discretion when it included this provision in the parenting plan.

Killey makes numerous arguments, alleging that insufficient evidence supports the parenting plan restrictions. He essentially argues about witness credibility and the weight of the evidence. Because this court does not reweigh evidence or review witness credibility, these arguments are unpersuasive.

First, Killey relies on In re Marriage of Katare[24] to argue that the court failed to make express findings to support the restrictions because it "simply checked a box" and did not specify the acts of domestic violence. But he cites that case out of context. In that case, this court found that it was ambiguous "whether the [trial] court found . . . a risk of abduction that justified the imposition of limitations."[25] This court remanded the case for the trial court "to clarify the legal basis for its decision to impose restrictions."[26] This case is not analogous to Katare because there is no ambiguity as to the trial court's finding of a history of domestic violence.

The parenting plan is sufficiently specific because it explicitly restricts Killey's residential time with A.S.K. due to "[a] history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm."[27] Although the court checked the

---

[24] 125 Wn. App. 813, 830, 105 P.3d 44 (2004).

[25] Id. at 830-31.

[26] Id. at 831.

[27] Clerk's Papers at 385.

box on this form, the plan clearly states the statute the court relied on and includes additional language stating that Killey "must comply with his domestic violence classes, parenting classes, drug and alcohol evaluations, and . . . [comply] with any and all recommendations of the aforementioned programs."[28] The parenting plan also details Killey's treatment requirements. This is sufficient under the controlling statutes.

To support his first argument, Killey argues that the court imposed restrictions without evidence of domestic violence because the 2010 case was dismissed, he acted lawfully that day, and other allegations of domestic violence were not proven. This ignores the other evidence before the court at the time of trial of this matter. At that time, the court was presented with evidence of multiple incidents sufficient to meet the definition of a history of domestic violence under RCW 26.50.010(1)(a). Thus, his argument is unpersuasive.

Second, Killey argues that the court erred by ordering batterer's treatment based on Hunter's opinion, inconsistent with RCW 26.09.191(6). RCW 26.09.191(6) provides "[i]n determining whether any of the conduct described in this section has occurred, the court shall apply the civil rules of evidence, proof, and procedure." Killey argues that Hunter's opinion is irrelevant and inadmissible because she was not an expert and her opinion was unsupported by documentation and contained false statements.

The court did not abuse its discretion in admitting the challenged evidence. Hunter's testimony and her domestic violence assessment are

---

[28] Id.

8

relevant because the assessment was ordered after the February reissuance of the temporary protection order. Moreover, this court does not reweigh the evidence or decide witness credibility. As previously stated, conflicting evidence "does not authorize this court to substitute its findings for those of the trial court."[29] Thus, Killey's claims of allegedly false statements in the domestic violence assessment do not demonstrate that insufficient evidence supported the trial court's finding.

To support this argument, Killey alleges that Hunter misapplied the law in finding domestic violence because she did not understand the definitions of domestic violence and physical force. This mischaracterizes her function as a witness at trial. She provided evidence from which the court, not Hunter, found a history of acts of domestic violence.

Killey also argues that a "de minimus incident from 2010" did not qualify as a basis to restrict his time with A.S.K. because RCW 26.50.010 requires "multiple acts of assault." This ignores evidence of multiple acts of domestic violence that was admitted at trial. Thus, Killey's argument is unpersuasive.

Additionally, Killey argues that Hunter's interview violated his right to due process. Specifically, he argues that Hunter's interviews with the parties, outside the presence of a court reporter or witnesses, were inconsistent with RCW 26.09.191(6) and CR 43. This argument has absolutely no merit.

As previously stated, RCW 26.09.191(6) provides that the court "shall apply the civil rules of evidence, proof, and procedure" when "determining

---

[29] Peter L. Redburn, Inc., 20 Wn. App. at 318.

whether any conduct described in this section has occurred." There is simply no rule that requires these types of interviews to be conducted before a court reporter.

Killey also argues that the parenting plan restrictions and treatment requirements violate his right to due process because the court "acted upon" Hunter's "inadmissible opinion." This claim is not a constitutional claim. Rather, it is a challenge to the admissibility of evidence. As previously discussed, the admission of Hunter's testimony was not an abuse of discretion.

Third, Killey argues that Rodriguez's claim for assault was barred. This is irrelevant. The issue in this case is whether substantial evidence supports the trial court's finding of a history of acts of domestic violence to impose residential time restrictions in the parenting plan. Assault is an alternate basis for restriction that is not at issue here.

Fourth, Killey argues that there is no basis for the parenting plan's restrictions because no eye witness testified to any domestic violence and Rodriguez's allegations were unsupported. He cites no authority for this argument, and we need not further consider it.[30]

Fifth, Killey argues that the parenting plan is manifestly unreasonable. Specifically, he argues that trial court did not apply the "best interests of the child" standard under RCW 26.09.002. He is wrong.

Killey ignores RCW 26.09.003, which provides:

---

[30] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); see also RAP 10.3(a)(6).

[T]he legislature finds that the identification of domestic violence as defined in RCW 26.50.010 and the treatment needs of the parties to dissolutions are necessary to improve outcomes for children. When judicial officers have the discretion to tailor individualized resolutions, the legislative intent expressed in RCW 26.09.002 can more readily be achieved. Judicial officers should have the discretion and flexibility to assess each case based on the merits of the individual cases before them.

"When interpreting a statute, our purpose is to determine and carry out the intent of the legislature and avoid an interpretation that would produce an unlikely, absurd, or strained result."[31] Each statutory provision must be read in relation to others "to 'achieve a harmonious and unified statutory scheme that maintains the integrity of the respective statutes.'"[32] In other words, "'[a]n act must be construed as a whole, considering all provisions in relation to one another and harmonizing all rather than rendering any superfluous.'"[33]

Although RCW 26.09.002 generally states that the "best interests of the child shall be the standard" for determining and allocating parental responsibilities, RCW 26.09.187(3)(a) provides that "[t]he child's residential schedule shall be consistent with RCW 26.09.191." We must construe these statutes in harmony. Adopting Killey's interpretation of RCW 26.09.002 would render RCW 26.09.003 and RCW 26.09.187(3)(a) superfluous. We decline to adopt such an unreasonable reading of these statutes. Because the parenting

---

[31] State v. W.S., 176 Wn. App. 231, 236, 309 P.3d 589 (2013).

[32] Id. at 237 (quoting State v. Chapman, 140 Wn.2d 436, 448, 998 P.2d 282 (2000)).

[33] State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) (quoting State v. George, 160 Wn.2d 727, 738, 158 P.3d 1169 (2007)).

plan restrictions are based on substantial evidence of a history of acts of domestic violence, the trial court correctly applied RCW 26.09.191.

Killey also argues that the court did not apply RCW 26.09.191(2)(n), which provides circumstances where the court does not have to apply time restrictions under subsection (2)(a). Specifically, Killey argues that the court should have found that the alleged 2010 assault did not provide a basis for the parenting plan restrictions. There is no merit to this argument.

As previously discussed, RCW 26.09.191(2)(a)(iii) requires limiting a parent's residential time with a child in a parenting plan if the court finds "a history of acts of domestic violence." A finding that a statutory alternative of assault is simply not required.

Sixth, Killey states that the court testified from the bench when it described, for the record, the evidence Killey presented. At the trial, Killey played a 2-minute video, without audio, which showed two exchanges of A.S.K. Killey also showed photographs of himself with the child.

Here, the judge did not testify, as Killey asserts. Rather, the court described the evidence for the record. Had the judge failed to do so, the record on appeal would not have been complete.

Similarly, Killey states that the court "admonished" him for commenting on the video. Although he cites rule 2.6(A) of the code of judicial conduct in a

footnote, he makes no argument that the judge violated his right to be heard. In the absence of cogent argument, we need not further address this claim.[34]

Seventh, Killey argues that the court denied his right to be heard by excluding expert testimony from his mother. He argues that she was qualified to testify to A.S.K.'s medical records. Because there is no merit in this argument, we disagree.

Expert witness qualifications are within the trial court's discretion, and "'will not be disturbed unless there is a manifest abuse of discretion.'"[35] "'Practical experience is sufficient to qualify a witness as an expert.'"[36]

Although Killey's mother had experience in the medical field, her experience with childhood illness as a mother and grandmother does not constitute practical experience or "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence."[37] Thus, the trial court did not abuse its discretion by not accepting Killey's mother as an expert and excluding her medical record testimony.

Killey also argues that the court abused its discretion by ruling that the social workers were qualified to review and interpret medical records and give

---

[34] Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989).

[35] In re Det. of A.S., 138 Wn.2d 898, 917, 982 P.2d 1156 (1999) (quoting Oliver v. Pac. Nw. Bell Tel. Co., 106 Wn.2d 675, 683, 724 P.2d 1003 (1986)).

[36] State v. Weaville, 162 Wn. App. 801, 824, 256 P.3d 426 (2011) (quoting State v. Ortiz, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992)).

[37] ER 702.

expert testimony as to A.S.K.'s condition. However, the court did not qualify either Brewer or Hunter as experts and neither of them testified as to A.S.K.'s medical records.

Eighth, Killey argues that Brewer had no basis to recommend parenting plan restrictions, arguing that the information she considered was based on false testimony. He also states that Brewer did not interview him, visit his home, or observe his interactions with A.S.K. He cites no authority for this argument and we need not consider this claim any further.[38]

Ninth, Killey argues that the court could have imposed restrictions on Rodriguez's residential time with A.S.K. under RCW 26.09.191(3). This argument makes no sense. The trial court properly determined from this record and the law that she is the custodial parent. Nothing in this record shows the court abused its discretion in this respect.

Tenth, Killey cites In re Welfare of Kirsten Key[39] to support his argument that the court's process of entering the parenting plan was unconstitutional. But that case involved a dependency order, where the child's mother argued that a dependency finding violated her due process rights.[40] Thus, that case is not analogous to this case.

Lastly, Killey argues that this court should vacate the May 2014 protection order because the commissioner allowed Rodriguez's allegedly false testimony

---

[38] See Darkenwald, 183 Wn.2d at 248; see also RAP 10.3(a)(6).

[39] 119 Wn.2d 600, 611, 836 P.2d 200 (1992).

[40] Id. at 609.

during the February 2014 protection order hearing. We need not address this argument because the evidence of a history of acts of domestic violence at trial supports the parenting plan.

Killey also states that the commissioner testified during the hearing on behalf of Rodriguez. Because the trial proceedings are the relevant proceedings before us, we need not address this claim dealing with an earlier hearing.

Here, the commissioner did not testify on behalf of Rodriguez. Rather, she merely explained her decision. At that hearing, Killey alleged that Rodriguez lied to the court, but the commissioner determined that she told the truth.

We affirm the final parenting plan and decree of dissolution.

Cox, J.

WE CONCUR: